UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Daniel A. Rassier, and<br>Rita Rassier,<br>     Plaintiffs, | Civil No. 17-938 (DWF/LIB) |
| v. | **MEMORANDUM**<br>**OPINION AND ORDER** |
| John L. Sanner; Pam Jensen; Stearns<br>County, Minnesota; and Ken McDonald;<br>     Defendants. | |

Devon M. Jacob, Esq., Jacob Litigation, and Michael B. Padden, Esq., Padden & McCollister PLLC, counsel for Plaintiffs.

Jason M. Hiveley, Esq., and Nathan Midolo, Esq., Iverson Reuvers Condon, counsel for Defendants Sanner, Jensen, and Stearns County.

Janine Wetzel Kimble, Esq., Noah Lewellen, Esq., Office of the Minnesota Attorney General, counsel for Defendant McDonald.

**INTRODUCTION**

The issue in this case is what remedy exists for a person wrongfully accused of a heinous crime? Particularly, what remedy exists when the accusation is the result of the ineptitude and retaliatory animus of state actors?[1] One of the plaintiffs in this case was labeled a person of interest for an infamous child kidnapping, and the plaintiffs' property was subject to numerous searches. The plaintiffs filed suit against Stearns County, John

---

[1] "State Actor" in the legal sense can mean any government employee.

Sanner (the county sheriff), Pam Jensen (a sheriff's captain), and Ken McDonald (an investigator for the Minnesota Bureau of Criminal Apprehension ("BCA")) for various state-law and constitutional claims. The defendants now move to dismiss. For the reasons discussed below, the Court grants BCA Agent McDonald's motion in full, and the Court grants in part and denies in part the Stearns County Defendants' motion.

## BACKGROUND

The facts of this case begin more than twenty-eight years ago when Jacob Wetterling was kidnapped, sexually assaulted, and murdered by Danny Heinrich. Jacob Wetterling was abducted at the end of the driveway on Plaintiffs'[2] 168-acre farm (the "Rassier Property"). The case remained unsolved until 2016 when Heinrich confessed. In late 2016, Madeleine Baran from American Public Media published a nine-part podcast (*Into the Dark*) tracing the time line and failures of the Wetterling investigation. The Amended Complaint in this action references and closely traces the reporting by Baran. (*See, e.g.*, Doc. No. 29 ("Am. Compl.") ¶ 203 n.12.)[3]

---

[2] The Court will refer to Plaintiffs Daniel A. Rassier and Rita Rassier collectively as "the Rassiers." Because both plaintiffs have the last name "Rassier," the Court will occasionally refer to Dan Rassier as "Dan," which should not be read to connote familiarity with Mr. Rassier and is used simply for readability.

[3] On a motion to dismiss, courts are not strictly limited to the allegations of the complaints and documents attached to it. *Dittmer Props., L.P. v. F.D.I.C.*, 708 F.3d 1011, 1021 (8th Cir. 2013). Instead, courts can consider "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned without converting the motion into one for summary judgment." *Id.* (quoting *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012) (internal quotation marks omitted)). Because the podcast is

(Footnote Continued on Next Page)

The events giving rise to this action start long after Jacob Wetterling was kidnapped, when Defendant John Sanner was elected sheriff of Stearns County in 2003. Sanner ran for sheriff promising to solve the Wetterling kidnapping. Defendants Sanner, Pam Jensen (Captain in the Sheriff's Office),[4] and Ken McDonald (Investigator for the Minnesota Bureau of Criminal Apprehension ("BCA")) all took part in the investigation starting in 2004 (collectively, the "Individual Defendants"). While reviewing the evidence, the Individual Defendants quickly focused in on Plaintiff Dan Rassier. The Individual Defendants' reasons for suspecting Dan Rassier were surprisingly thin, including that Dan's dog did not bark when Heinrich parked at the end of the Rassiers' driveway and that Dan did not have much of a love life. Meanwhile, Plaintiffs allege, a mountain of evidence existed against Danny Heinrich, who was a serial predator in the area: After his arrest, Heinrich admitted to sexually assaulting another young boy in the area just nine months before the Wetterling kidnapping. In that case, Heinrich took the boy's clothes after the assault. When Heinrich was arrested, police recovered several bins of boys' clothes from Heinrich's home.

This action focuses on events in 2010 when Defendants searched the Rassier Property, and Defendant Sanner labeled Dan Rassier as a person of interest in the

---

(Footnote Continued From Previous Page)
referenced in the Amended Complaint, the Court will consider it. The Court, however, would remind attorneys that incorporating news reports or podcasts means that, to the best of the attorneys' knowledge, the articles or podcasts have evidentiary support. *See* Fed. R. Civ. P. 11.

[4]    Sanner, Jensen, and Stearns County are referred to collectively as, the "Stearns County Defendants."

Wetterling kidnapping. In 2010, BCA Agent McDonald applied for search warrants for the Rassiers' farm. The first application occurred on June 28, 2010. As a result, Defendants obtained a search warrant for Plaintiffs' farmland and several outbuildings. During the search, two police canines independently alerted their handlers that human remains were buried on the farmland. (The canines were trained to distinguish between human remains and animal remains.) (Doc. No. 29-2 (Second search-warrant application documenting the ability, training, and certifications of the dogs).) Additionally, the canines identified a wooden box, which appeared to be able to fit a small person, as possibly once containing human remains. In 2010, the Rassiers had owned the wooden box for 30 years and until 2004 had kept it in their home. McDonald concluded that based on the box's dimensions, Jacob Wetterling could have been kept in the box. Accordingly, McDonald applied for and received a search warrant for the Rassiers' home. Plaintiffs contend that Defendants made false statements and omitted material facts in their application for the search warrants. As a result of the search, Defendants seized dirt and the wooden box from the Rassier Property. Plaintiffs allege that the wooden box and dirt were subsequently destroyed.

    Plaintiffs also contend that Defendants focused on Dan Rassier because he had been critical about the investigation and the Sheriff's Office. For instance, during the 2010 search, Dan Rassier allegedly asked Sheriff Sanner why he was searching the Rassier Property. Sanner allegedly responded, "This is what happens when you talk." (Am. Compl. ¶ 214.) Then on July 2, 2010, Sanner told the *St. Cloud Times* that Dan Rassier was a person of interest. Dan Rassier was the only person labeled a person of

4

interest until Danny Heinrich in 2015 after his home was searched. In an interview for *Into the Dark*, Sanner stated that he called Rassier a person of interest after Rassier talked about the Wetterling kidnapping with the *St. Cloud Times*.[5]

The Rassiers filed an amended complaint alleging nine causes of action stemming from the 2010 searches and Dan Rassier being labeled a person of interest: Counts I-IV are 42 U.S.C. § 1983 claims against the Individual Defendants based on the searches and seizures in 2010; Count V is a § 1983 claim against the Individual Defendants for First Amendment retaliation; Count VI is a § 1983 claim for denial of procedural due process against the Individual Defendants associated with the stigma of being labeled a person of interest; Count VII is against Stearns County for municipal liability under § 1983; Count VIII is against all Defendants for intentional infliction of emotional distress (generally, "IIED"); and Count IX is against all Defendants for defamation. Plaintiffs also allege that they are entitled to punitive damages. Defendants have moved to dismiss on the grounds that Plaintiffs' claims are time-barred or that Plaintiffs have failed to state a claim.

## DISCUSSION

### I.     Legal Standard

In deciding a motion to dismiss under Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th

---

[5]  *Into the Dark: Person of Interest*, American Public Media (September 27, 2016), https://www.apmreports.org/story/2016/09/27/in-the-dark-5 at 40:15-41:00.

Cir. 1986). In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged, *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). A court deciding a motion to dismiss may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint. *See Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id*. at 555. As the Supreme Court reiterated, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 556.

## II.    Statute of Limitations

At the outset, the Court must address Defendants' argument that all of the Rassiers' claims are barred by the applicable statute of limitations. For the purposes of the statute of limitations, the Rassiers' claims can be divided into two groups: the § 1983 claims and the state-law claims. Here, Defendants' statute-of-limitations defense

presents three issues: (1) the length of the limitations period; (2) when the claims accrued; and (3) whether equity tolled the running of the limitations period.

Section 1983 does not contain a statute of limitations; instead, courts apply the state statute of limitations for personal-injury torts. *Wallace v. Kato*, 549 U.S. 384, 387 (2007). In Minnesota, the statute of limitations for personal-injury torts is six years. Minn. Stat. § 541.05; *United States v. Bailey*, 700 F.3d 1149, 1153 (8th Cir. 2012) ("The statute of limitations on claims under 42 U.S.C. § 1983 and *Bivens* . . . is six years in Minnesota."). For the Rassiers' state-law claims—IIED and defamation—the statute of limitations is two years. Minn. Stat. § 541.07(1); *Songa v. Sunrise Senior Living Invs. Inc.*, 22 F. Supp. 3d 939, 942 (D. Minn. 2014). Here, Plaintiffs filed their initial complaint on March 29, 2017, for conduct that occurred in 2010 or earlier. Thus, facially, the Rassiers' claims appear untimely.

Nonetheless, the Court must determine when the Rassiers' claims accrued to determine when the statute of limitations began to run. For the §1983 claims, federal law applies, and for the state-law claims, state law applies. *See Wallace*, 549 U.S. at 388. The claims under § 1983 accrue when the plaintiff has "a complete and present cause of action"—in other words, when "the plaintiff can file suit and obtain relief." *Id.* In this case, Plaintiffs' claims related to the search accrued on the date of the searches in 2010. *See, e.g.*, *Smith v. McCarthy*, 349 F. App'x 851, 857 (4th Cir. 2009) (concluding that the claim for an illegal search accrued on the date of the search); *Pearce v. Romeo*, 299 F. App'x 653, 655 (9th Cir. 2008) ("An injury from an illegal search and seizure accrues when the act occurs."). Similarly, Plaintiffs' claims related to being named a person of

interest accrued when Defendant Sanner named Dan Rassier a person of interest in 2010. *See Gekas v. Vasiliades*, 814 F.3d 890, 894 (7th Cir. 2016) ("Generally, the statute of limitations clock begins to run on First Amendment retaliation claims immediately after the retaliatory act occurred.")  For defamation, the claim accrued on the date of publication in 2010.  *McGovern v. Cargill, Inc.*, 463 N.W.2d 556, 558 (Minn. Ct. App. 1990).  Similarly, Plaintiffs' claim for IIED accrued on the date of the tortious act, again in 2010.  *See Krause v. Farber*, 379 N.W.2d 93, 97 (Minn. Ct. App. 1985).

Even if a claim has accrued and the statute of limitations has facially run, Courts sometimes find that the statute of limitations was tolled for the sake of equity.  State law governs the tolling of the statute of limitations for both § 1983 claims and state-law claims.  *See Wallace*, 549 U.S. at 394.  Minnesota recognizes the doctrine of equitable tolling, which tolls a statute when "a litigant establishes two elements:  '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.'" *Menominee Indian Tribe of Wis. v. United States*, 136 S. Ct. 750, 755 (2016) (quoting *Holland v. Florida*, 560 U.S. 631, 649 (2010)); *see also Sanchez v. State*, 816 N.W.2d 550, 560 (Minn. 2012) (applying *Holland* test for equitable tolling for state post-conviction relief).

Here, the Court concludes that Plaintiffs have adequately pleaded that the statute of limitations was tolled under the doctrine of equitable tolling.  First, Plaintiffs have demonstrated that an extraordinary circumstance prevented the filing of this suit:  Plaintiffs were unaware of the false statements in the warrants until they were unsealed, and Plaintiffs were unaware of the evidence against Danny Heinrich until his arrest.

8

Similarly, Plaintiffs have adequately alleged that they acted diligently given the circumstances: Dan Rassier called in 2010 asking for the warrant but was told that the warrant was under seal. Shortly after the warrant was unsealed in September 2016, Plaintiffs filed suit. Similarly, Plaintiffs could not learn of the evidence about Danny Heinrich until he was arrested in 2016, and Plaintiffs cannot be expected to exercise more diligence investigating Heinrich than the Sheriff's Office. As a result, the Court concludes that Plaintiffs have adequately pleaded tolling of the statute of limitations.[6] The Court therefore denies Defendants' motions to dismiss based on the running of the statute of limitations.[7]

## III.    Search Warrants

The Rassiers allege that Defendants violated the Fourth Amendment by making false statements in their application to obtain search warrants for the Rassier Property. As a result, the Rassiers contend, Defendants also illegally seized and destroyed property.

---

[6]    Even though the Court declines to dismiss the case on statute-of-limitations grounds, Defendants may be able to demonstrate after discovery that tolling is not warranted.

[7]    The Stearns County Defendants also argue that the Court should strike the Rassiers' Amended Complaint because it was not timely filed in response to the first motion to dismiss. *See* Fed. R. Civ. P. 15(a). The Court, however, concludes that to strike the Amended Complaint would place the form of the rules over their substance because the Court would grant the Plaintiffs leave to amend under Rule 15(a)(2) or the Court would grant a motion for extending the time for Plaintiffs to file their amended complaint under Rule 6(b)(1)(B). *See* Fed. R. Civ. P. 1 ("[The Rules] should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding."). Thus, the Court declines to strike the Amended Complaint.

To state a claim under § 1983 for misstatements or omissions in a search warrant, the plaintiff must allege that: (1) a false statement or material omission was knowingly and intentionally, or with reckless disregard to the truth, included in or omitted from the affidavit, and (2) the affidavit's remaining content with the omissions and without the misrepresentations is insufficient to provide probable cause. *See, e.g.*, *Williams v. City of Alexander, Ark.*, 772 F.3d 1307, 1311 (8th Cir. 2014); *Schaffer v. Beringer*, 842 F.3d 585, 594 (8th Cir. 2016), *cert. denied*, 137 S. Ct. 2299, 198 L. Ed. 2d 726 (2017).

Here, even omitting the alleged misstatements and including the alleged omissions, the Court concludes that probable cause supported the search warrants. It has never been disputed that the Wetterling kidnapping occurred on the Rassier Property. Thus, any affidavit could support probable cause to search the farm property because there was reason to believe that evidence of the crime would be found there. *See, e.g.*, *United States v. Paton*, 535 F.3d 829, 836 (8th Cir. 2008) ("A warrant is supported by probable cause if there is a fair probability that contraband or evidence of a crime will be found in the place to be searched." (quoting *United States v. Thompson*, 210 F.3d 855, 860 (8th Cir. 2000))). Plaintiffs' complaint focuses on whether the evidence supported the conclusion that Dan Rassier committed the crime, but that focus is wrong. *See, e.g.*, *Ganek v. Leibowitz*, 874 F.3d 73, 82-83 (2d Cir. 2017). Because there was probable cause to believe evidence of the Wetterling kidnapping could be found on the Rassier Property, the Court dismisses Plaintiffs' Fourth Amendment claim to the extent that it is based on the first search.

Plaintiffs also contend that the second search—the search of the Rassiers' home—violated their Fourth Amendment rights. During the first search of the Rassier Property, two different police dogs alerted their handlers of the odor of decomposing human remains in a wooden box found in one of the outbuildings. The Rassiers volunteered that the box had been in their home during the time of the Wetterling kidnapping, and the police theorized that the box could have fit Jacob Wetterling's body. According to the search-warrant affidavit, the dogs could distinguish between odors from human remains and those from animal remains. (Doc. No. 29-2 at 12.) Plaintiffs do not contest the statements about the police dogs' ability. Based on the information obtained from the first search, Defendants sought a new search warrant for the home.

Given the information obtained from the first search, which Plaintiffs do not contest, the Court concludes that Defendants had probable cause to search the house. Again, the Rassiers focus on whether there was probable cause to believe Dan Rassier committed the crime. As explained above, the focus is whether it is reasonable to believe that evidence of a crime will be found in the area to be searched. Thus, the Court concludes that the Rassiers have failed to adequately plead § 1983 claims for the searches of the Rassier Property.

## IV. Damage to Property as a Result of the Search

The Rassiers also brought claims against Defendants related to the seizure and alleged destruction of soil and a wooden box from the Rassier Property. To state a Fourth Amendment claim under § 1983 for property damage, the plaintiff must allege that the searching officers acted unreasonably in causing the property damage. *See, e.g.*,

*Cook v. Gibbons*, 308 F. App'x 24, 28 (8th Cir. 2009) ("[O]fficers executing search warrants on occasion must damage property in order to perform their duty." (quoting *Dalia v. United States*, 441 U.S. 238, 258 (1979)).  Here, Plaintiffs rely on the false statements in the search warrants as their basis for the § 1983 claim, which the Court has already rejected.  Moreover, Plaintiffs did not even respond to Defendants' arguments regarding the claim for property damage.  The Court therefore concludes that Plaintiffs have failed to state a § 1983 claim that Defendants violated Plaintiffs' Fourth Amendment rights as a result of any property damage.

Additionally, Plaintiffs contend that their Fifth Amendment rights were violated by Defendants taking the property without just compensation.  Minnesota Statute § 626.04 provides the procedure for the return of property that is seized by police.  Under § 626.04, if the police do not return the property, then the next step is to file a petition in state court.  For the Rassiers to bring this claim in federal court, they must first exhaust the state procedures.  *See, e.g.*, *Crawford v. Van Buren Cty., Ark.*, 678 F.3d 666, 670 (8th Cir. 2012); *Statham v. City of Saint Paul*, Civ. No. 13-03570, 2015 WL 1457540, at *6 (D. Minn. Mar. 30, 2015).  The Rassiers have not alleged that they have exhausted state remedies.  Thus, the Court dismisses the Rassiers' Fifth Amendment claim.

**V.    First Amendment Retaliation**

Plaintiffs also brought a claim alleging that Defendants retaliated against them for Dan Rassier's exercise of his First Amendment rights.  Specifically, Plaintiffs allege that as a result of Dan Rassier publicly criticizing law enforcement, Defendants obtained search warrants for the Rassier Property and named Dan Rassier a person of interest.  In

an interview for *Into the Dark*, Defendant Sanner stated that he labeled Dan Rassier a person of interest after Rassier decided to criticize the Sheriff's Office to the *St. Cloud Times*.

To state a claim for First Amendment retaliation, a plaintiff must allege that: "(1) he engaged in a protected activity, (2) the government official[s] took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity." *Bennie v. Munn*, 822 F.3d 392, 397 (8th Cir. 2016) (alteration in the original); *accord Scott v. Tempelmeyer*, 867 F.3d 1067, 1070 (8th Cir. 2017).

Here, Plaintiffs have adequately alleged a claim against the Stearns County Defendants for retaliation.[8] Dan Rassier engaged in protected speech, after which the government actors labeled him a person of interest in a heinous crime. Being labeled a person of interest in a heinous crime is likely to chill protected activity. And Sheriff Sanner later stated that he labeled Dan Rassier a person of interest because Dan spoke with the *St. Cloud Times* about the investigation, which is protected activity. Thus, the Court concludes that Plaintiffs have adequately stated a claim for retaliation. Moreover, the Stearns County Defendants have made no specific arguments about Plaintiffs'

---

[8] Plaintiffs also bring this claim against McDonald, but make no specific allegations against him. Thus, the Court dismisses the claim to the extent it is brought against McDonald.

retaliation claim. The Court therefore denies Defendants' motion to dismiss the retaliation claim.[9]

## VI. Procedural Due Process-Stigma

The Rassiers also brought a § 1983 claim alleging a violation of their right to procedural due process stemming from the stigma associated with being named a person of interest in the Wetterling kidnapping. To state a procedural-due-process claim for stigma, the plaintiff must allege damage to his reputation plus some alteration to a right or legal status. *See, e.g.*, *Brown v. Simmons*, 478 F.3d 922, 923 (8th Cir. 2007); *Gunderson v. Hvass*, 339 F.3d 639, 644 (8th Cir. 2003). Here, the Rassiers allege that Dan Rassier was ostracized from the community, and that he was damaged because parents would no longer hire him (a music teacher) to tutor students. Such allegations do not rise to the level of a constitutional violation. *See Brown*, 478 F.3d at 923; *see also Hinkle v. White*, 793 F.3d 764, 769 (7th Cir. 2015) ("But this court has *never* held that the State infringes on a plaintiff's liberty interest when the defamation *alone* renders it virtually impossible for the [individual] to find new employment in his chosen field." (quotation marks omitted) (alteration in the original)). The Court therefore must dismiss Plaintiffs' § 1983 claim for violation of procedural due process.

---

[9] Plaintiffs also reference the 2010 searches and seizures in their claim for retaliation, but a search based upon probable cause cannot give rise to a retaliation claim. *Cf. Williams v. City of Carl Junction, Mo.*, 480 F.3d 871, 875 (8th Cir. 2007) (noting that a plaintiff must plead a lack of probable cause to adequately plead a First Amendment retaliation claim for prosecution of a crime). The Court therefore grants Defendants' motions to dismiss to the extent that Plaintiffs' retaliation claim is based on those searches and seizures.

## VII. Municipal Liability

Plaintiffs have also brought a claim against Stearns County for liability arising from the wrongdoing of the Sheriff's Office and County Attorney's Office. It is well established that a governmental entity cannot be held liable under § 1983 on a respondeat superior theory. *See Monell v. Dep't of Social Servs.,* 436 U.S. 658, 691 (1978). Thus, a government body cannot be held liable under § 1983 merely because it employs a tortfeasor. *Id.* at 691-92. For a municipality to be liable under § 1983, a plaintiff must prove that a municipal policy or custom was the "moving force [behind] [a] constitutional violation." *Id.* at 694. Specifically, a plaintiff must identify a policy that is constitutionally deficient and must show that employees complied with the policy, thereby causing a constitutional violation. *Kuha v. City of Minnetonka,* 365 F.3d 590, 603-05 (8th Cir. 2003), *abrogated on other grounds by Szalba v. City of Brooklyn Park,* 486 F.3d 385 (8th Cir. 2007). Stearns County makes no specific arguments regarding Plaintiffs' claim for municipal liability. Thus, the Court concludes that the claim survives to the extent that the other constitutional claims survive.

## VIII. Intentional Infliction of Emotional Distress

Plaintiffs also have brought claims for intentional infliction of emotional distress stemming from statements made to obtain the search warrants and for labeling Dan Rassier a person of interest. Defendants have moved to dismiss the claim only as it

15

relates to the search warrants.[10] Because the Court concluded that the search warrants for the Rassier Property were based on probable cause, Plaintiffs' claim for intentional infliction of emotional distress based on the searches fails. *See Cassette v. King Cty.*, 338 F. App'x 585, 586 (9th Cir. 2009) (concluding that the plaintiff's claim for intentional infliction of emotional distressed based on a search failed because probable cause existed for the search).

## IX. Defamation

Plaintiffs also brought a claim for defamation stemming from statements made in the warrant documents and for labeling Rassier as a person of interest to the media. Defendants have moved to dismiss the claim only as it relates to the search warrants.[11] Under Minnesota law, Defendants' statements made in their application for a search warrant are not actionable for defamation. *See McGovern v. Cargill, Inc.*, 463 N.W.2d 556, 558 (Minn. Ct. App. 1990). Thus, the Court dismisses Plaintiffs' defamation claim to the extent it is brought based on statements made when Defendants applied for the search warrants.

## X. Punitive Damages

The Rassiers also contend that they are entitled to punitive damages for their claims. Defendants move to dismiss the demand for punitive damages for the state-law

---

[10] Because Defendants did not move to dismiss the IIED claim as it relates to Dan Rassier being labeled a person of interest, that claim will go forward.

[11] Because Defendants did not move to dismiss the defamation claim as it relates to Dan Rassier being labeled a person of interest, that claim will go forward.

claims. Under Minnesota Statute §§ 549.191 and 549.20, a demand for punitive damages cannot be pleaded in the original complaint; the plaintiff must add the demand through a motion to amend. Here, Plaintiffs did not file a motion to amend to add punitive damages. Instead, they argue that §§ 549.191-.20 do not apply to their state-law claims. Courts in this district, however, have consistently applied §§ 549.191-.20 to state-law claims. *Ulrich v. City of Crosby*, 848 F. Supp. 861, 866 (D. Minn. 1994) (collecting cases) ("In the Federal Courts of this District, the pleading of a punitive damage claim, under causes of action premised upon the Laws of the State of Minnesota, must generally conform to the requisites of Minnesota Statutes Sections 549.191 and 549.20."). Because Plaintiffs have failed to comply with §§ 549. 191-.20, the Court dismisses the demand for punitive damages for the state-law claims.

## CONCLUSION

Based on the foregoing, the Court grants Defendants' motions to the extent they are brought based on the 2010 search warrants. Additionally, the Court grants Defendants' motion to dismiss Plaintiffs' claim for procedural due process. Remaining after this order are Plaintiffs' claims for First Amendment retaliation, IIED, and defamation stemming from Defendant Sanner labeling Dan Rassier a person of interest. Because Plaintiffs do not make any allegations against Defendant Ken McDonald related to those claims, the Court dismisses him from the action.

## ORDER

Based on the files, record, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant Ken McDonald's Motion to Dismiss (Doc. No. [30]) is **GRANTED** as follows:

   a. Ken McDonald's Motion to Dismiss for Failure to State a Claim is **GRANTED**.

   b. Plaintiffs' Amended Complaint (Doc. No. [29]) is **DISMISSED WITH PREJUDICE** to the extent that it brought claims against Ken McDonald.

   c. Ken McDonald is **DISMISSED** as a party to this action.

2. The Stearns County Defendants' Motion to Dismiss (Doc. No. [36]) is **GRANTED IN PART** and **DENIED IN PART**.  Consistent with the Court's Memorandum Opinion, the Court **DISMISSES WITH PREJUDICE** claims in the Amended Complaint (Doc. No. [29]) as follows:

   a. Count I, II, III—for the 2010 searches and seizure.

   b. Count V—Retaliation—to the extent the claim is brought based on the 2010 searches and seizures.

   c. Count VI—Procedural Due Process-Stigma.

   d. Count VIII—Intentional Infliction of Emotional Distress—to the extent that the claim is brought based on the 2010 searches and seizures.

   e. Count IX—Defamation—to the extent that the claim is brought based on the 2010 searches and seizures.

3. The Court dismisses Count IV—Fifth Amendment taking—**WITHOUT PREJUDICE**.

4. The Court dismisses Plaintiffs' claim for punitive damages for Counts VIII and IX—IIED and Defamation—**WITHOUT PREJUDICE**.

Dated:  November 30, 2017            <u>s/Donovan W. Frank</u>
                                     DONOVAN W. FRANK
                                     United States District Judge